```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
RYSHON WELLS,                   :
                                :
     Plaintiff,                 :
                                :
V.                              :     CASE NO. 3:13-cv-1349(RNC)
                                :
SAMUEL STAFFORD, ET AL.,        :
                                :
     Defendants.                :
```

## RULING AND ORDER

Plaintiff Ryshon Wells, a Connecticut inmate proceeding pro se, brings this action under 42 U.S.C. § 1983 against employees of the Department of Correction.  Defendants have moved for summary judgment.  For reasons that follow, the motion is denied.

I.   Background

The evidence in the record, viewed fully and most favorably to the plaintiff, shows the following.  On January 30, 2013, plaintiff's cellmate left the cell door open upon exiting. Correctional Officer Lempicki saw the open door and ordered plaintiff to shut it, using a loud tone of voice.  Plaintiff complied but he did not like the manner in which Lempicki had spoken to him.  After closing the cell door, plaintiff resumed using ear buds to listen to music.  When Lempicki next toured the unit, plaintiff confronted him to complain about the way he had spoken to the plaintiff.  In doing so, plaintiff believed he was acting in accordance with the Inmate Handbook's section on informal problem resolution.  Correctional Officer Stafford told

Lempicki to keep walking and not talk to the plaintiff. Plaintiff took exception to Stafford's interruption, which angered Stafford, who called a "false code." Plaintiff retreated into his cell, placed the ear buds in his ears, and began gathering his property. Lieutenant Crawford soon appeared at the cell door in response to the code and ordered plaintiff to come to the door but he did not hear her because he was listening to music at high volume and thus inadvertently failed to comply with her order. She decided to place plaintiff in administrative detention. He was handcuffed and escorted to the restrictive housing unit.

     Lieutenant Crawford informed plaintiff that she intended to conduct a strip search and asked if he would consent to have the search performed by a female. He remained silent. She told him to step into a designated area. He complied. She told him that any action on his part except as instructed would be considered hostile and asked if he understood. He did not respond. Crawford then conducted a controlled strip search, which is hands-on, rather than simply visual. Plaintiff offered no resistance.

     After the controlled strip search, Crawford ordered that plaintiff be placed in restraints, including leg irons, handcuffs and a "black box." He remained in these restraints for the next 26 hours. During this time, he was freezing cold.

Plaintiff received a total of three disciplinary reports in connection with these events.  The first report, issued by Crawford on January 30, stated that plaintiff had failed to comply when she told him to come to his cell door.  The report states: "Inmate Wells refused to answer me and refused to comply with my orders.  By refusing my direct orders and continuing to gather his property, his actions interfered with the escort and placement."  Compl. Ex. A (ECF. No. 1-1) at 2.  The second report, also dated January 30, was prepared by Correctional Officer Syed at the direction of Crawford.  It states that plaintiff "refused to comply with a routine strip search.  This then led to a control strip search."  Compl. Ex. B (ECF. No. 1-2) at 2.  The third report was issued by Stafford, again on the same date.  It concerns plaintiff's door being open after his cellmate exited.  According to this report, plaintiff "stated that he does not have to secure shit, that['s] not his job . . . ."  Compl. Ex. C (ECF. No. 1-3) at 2.

On February 13, 2013, Lieutenant Lepaoja undertook to conduct a hearing on the three reports.  While waiting for plaintiff's advocate, Lepaoja told plaintiff that she intended to dismiss two of the charges but wanted him to plead  guilty to the other one.  He responded by telling her that the charge she was referring to had no merit.  She told him not to speak while she was speaking but he continued to speak, insisting that the charge

3

was meritless and she should look at the evidence, particularly the videotape.  After plaintiff failed to comply with Lepaoja's order to stop talking, she asked a correctional officer to return him to his cell.  A hearing then took place in his absence and he was found guilty of all three charges.  He received notice of the guilty findings but no explanation of the factual basis for the findings.  He received sanctions of 30 days' loss of recreation, 45 days' punitive segregation, 60 days' loss of visits, 180 days' loss of commissary and 180 days' loss of phone.

II.  Legal Standard

Summary judgment may be granted when there is no "genuine issue as to any material fact" and, based on the undisputed facts, the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In assessing the evidence, the court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences and disregard evidence favorable to the movant that a jury would not have to believe.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000).

III.  Discussion

The pro se complaint can be construed as attempting to state claims under § 1983 for violations of his First Amendment right to be free from retaliation, his rights under the Eighth Amendment to be free from excessive force and inhumane conditions of confinement, and his Fourteenth Amendment right to be free from deprivations of liberty without due process.  Defendants move for summary judgment on all these claims on the grounds that the claims are unsupported and they are entitled to qualified immunity.

   A. <u>Retaliation</u>

It is well-established that prison officials may not retaliate against an inmate for exercising constitutional rights. <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995).  To prove a retaliation claim, a plaintiff must show that he engaged in protected speech, (2) the defendant took adverse action against him, and (3) there was a casual connection between the protected speech and the adverse action.  <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001).  Prisoners' claims of retaliation are examined "with skepticism and particular care" because of "the near inevitability of decisions and actions by prison officials to which prisoners will take exception" and "the ease with which claims of retaliation may be fabricated." <u>Colon</u>, 58 F.3d at 872 (citing <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983)).

In this case, plaintiff alleges that the defendants

5

retaliated against him by writing false disciplinary reports, placing him in administrative detention, putting him in in-cell restraints, excluding him from the disciplinary hearing and finding him guilty of the three charges.  Defendants contend that these claims should be dismissed because plaintiff fails to allege that he engaged in protected activity.  In his brief in opposition to summary judgment, plaintiff argues that he engaged in protected activity when he complained to Lempicki about the manner in which Lempicki had spoken to him, when he remained silent in response to Crawford's questions concerning the strip search, and when he persisted in speaking to Lepaoja about the merits of the charge prior to the disciplinary hearing. Defendants have not replied to plaintiff's opposition and thus have not demonstrated - or attempted to demonstrate - that his conduct was unprotected.  Rule 56 requires a movant to demonstrate that it is entitled to judgment as a matter of law. Because defendants have not attempted to make this showing with regard to the retaliation claims, as clarified by plaintiff's opposition, the motion as to those claims will be denied.

    B. <u>Excessive Force</u>

Plaintiff alleges that Crawford's use of in-cell restraints constituted excessive force.  When an inmate alleges use of excessive force by a correctional officer, the issue is "whether force was applied in a good-faith effort to maintain or restore

discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillon, 503 U.S. 1, 6—7 (1992). Defendants argue that in-cell restraints had to be used in this instance because plaintiff was acutely disruptive.  Restraints are appropriately used to control disruptive behavior. See Alston v. Butkiewicus, 3:09-CV-207 CSH, 2012 WL 6093887, at *11 (D. Conn. Dec. 7, 2012) ("The defendants have provided evidence that the decisions to utilize in-cell or four-point restraints were intended to control the plaintiff's disruptive behavior, not to impose unnecessary punishment or the wanton infliction of pain").  But plaintiff's affidavit denies he was disruptive, much less acutely disruptive.  Crediting his affidavit, as the court must at this stage, a factfinder could reasonably conclude that use of in-cell restraints violated his right to be free from excessive force.

    C.   Conditions of Confinement

Conditions of confinement must conform to the requirements of the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  Plaintiff's affidavit states that during the 26 hours that he was on in-cell restraints status, he was confined in a cell without ventilation, proper clothing, or a bed roll and that as a result he nearly froze.  Defendants have not replied.  Crediting the affidavit, defendants are not entitled to summary judgment on this claim.

D. Due Process

Plaintiff claims that his right to procedural due process was violated in connection with the disciplinary hearing in that he was excluded from the hearing and was not given a statement of reasons explaining the basis for the guilty findings.  "When an inmate is charged with a rules violation that could lead to the loss of good-time credits or to confinement in SHU, at least the 'minimum requirements of procedural due process appropriate for the circumstances must be observed.'"  Benitez v. Wolff, 985 F.2d 662, 665 (2d Cir. 1993) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).  Due process usually requires that the inmate be allowed to call witnesses and present documentary evidence in his defense (as long as this does not pose as hazard to institutional safety or correctional goals), and that the factfinder at the hearing provide a written statement setting forth the evidence relied on and reasons for the disciplinary action.  Id.

Defendants do not deny that plaintiff was entitled to due process protections in connection with the disciplinary hearing.  The contend, however, that he received due process.  They submit that he was properly excluded from the hearing because he was argumentative and refused to comply with Lepaoja's order to stop.  Plaintiff admits continuing to speak after he was ordered to stop.  Given his admission, a factfinder would have to conclude

8

that excluding him from the hearing did not violate his right to due process.  See Bogle v. Murphy, 98-CV-6473 CJS, 2003 WL 22384792, at *7 (W.D.N.Y. Sept. 9, 2003) (inmate had no right to be physically present at disciplinary hearing).  However, Lepaoja's statement of reasons seems insufficient.  Her explanation of why plaintiff was found guilty on all three charges reads as follows: "I/M Wells #242860.  I/M became disruptive before hearing started due to the inmate behavior he was removed from hearing."  Compl. Exs. A, B, C (ECF Nos. 1-1, 1-2, 1-3).  This statement appears to fall well short of the explanation due process requires.  See Webster v. Fischer, 694 F. Supp. 2d 163, 189 (N.D.N.Y. 2010) ("In order to pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination also must garner the support of at least "some evidence.'") (citation omitted).

    IV. Conclusion

    Accordingly, defendants' motion for summary judgment is hereby **denied**.  Unless the case settles, a bench trial will be held.  The parties will inform the Clerk within 21 days of this order if they want to request a settlement conference.  In the absence of such a request, the parties' proposed findings of fact and conclusions of law will be filed within 60 days of this order.  Otherwise, they will filed within 30 days after the settlement conference.

So ordered this 31st day of March 2015.

                                                   /s/RNC
                                         Robert N. Chatigny
                                 United States District Judge